SHIRLEY C. MARCH v. MARCH GARDENS, INC. AND ANOTHER.[1]

July 1, 1938.

No. 31,683.

*Lewis E. Lohmann, L. N. Foster,* and *E. A. Linnee,* for relators.
*Reed & Bergerud,* for respondent.

[1]Reported in 280 N. W. 644.

196

HOLT, JUSTICE.

*Certiorari* to review a compensation award made by the industrial commission for the accidental death of respondent's husband.

The relator employer is a corporation engaged in the nursery and landscape gardening business. It has about seven and one-half acres of land in two tracts in Oxboro Heath, the one tract of three and one-half acres contains a six-room dwelling, formerly owned by respondent, and the other, of four acres, is located a block or so away therefrom. Nursery stock is growing upon these tracts. When the employer incorporated, respondent transferred her home to it in exchange for shares of its capital stock. In October, 1936, there were outstanding 336 shares of stock in the corporation owned by the following persons: Respondent 173 shares; H. E. Atkinson 80 shares; J. P. Snyder 80 shares; S. L. Flesher 2 shares; and William T. March, respondent's husband, 1 share. The par value was $100 a share. William T. March was president and general manager during the year 1936 at the salary of $2,590, fixed at the beginning of the year by the board of directors. October 6, 1936, March was instantly killed in an automobile accident, and respondent, his widow and sole dependent, petitioned the industrial commission for an award pursuant to the workmen's compensation act. The referee found that "William T. March was employed by March Gardens, Inc., as general manager at a weekly wage of $49.81, under a Minnesota contract of hire," and that while so employed he met with an accident arising out of and in the course of his employment which caused his death and awarded compensation at the rate of $19.92 weekly during dependency. Relators appealed to the commission, which approved and adopted the findings of the referee, one commissioner dissenting.

Relators attack the two findings mentioned, *viz.:* (a) That March was an employe of the corporation at the time of the accident which resulted in his death, and (b) "that on and prior to the 6th day of October, 1936, William T. March was employed by March Gardens, Inc., as general manager at a weekly wage of $49.81, under a Minnesota contract of hire." There is no contention that the accident

which caused the death of Mr. March did not arise out of and in the course of the work he was performing for the corporation. But it is the claim of relators that as president, the chief executive officer, he could not be an employe so as to come under the workmen's compensation act. Relators cite and rely on Donaldson v. William H. B. Donaldson Co. 176 Minn. 422, 223 N. W. 772; Erickson v. Erickson Furniture Co. 179 Minn. 304, 229 N. W. 101; Benson v. Hygienic Artificial Ice Co. 198 Minn. 250, 269 N. W. 460. In the Donaldson case, Donaldson owned all but two of the shares of the capital stock of the corporation. He controlled and directed its activities. No one hired him. No one could discharge him. We reversed the industrial commission's finding that Donaldson was an employe; but recognized the general rule that an officer, director, and stockholder in a corporation may be an employe thereof within the meaning of the compensation act and cited cases to that effect. In the Erickson case, while it appears that Erickson spent most of his time in the business place of the corporation doing manual labor, he could not be considered an employe, for he had no salary or wage, he drew what money he thought he needed, and he came to work and left as he pleased. He owned 414 of the 450 shares of stock issued by the corporation, and was the president and a director, but his son was the general manager of its business. It could not be said that Erickson was hired to work for wages, and the industrial commission refused to find that he was an employe. That finding was sustained. In the Benson case there was a finding that the accidental injury did not arise out of and in the course of the employment. That was sufficient to affirm; but this court went further and reversed the finding of the commission that Benson was an employe of the corporation at the time of his accidental injury, which ruling also led to a denial of compensation. The case, cited by relators, of Hodges v. Home Mortgage Co. 201 N. C. 701, 706, 161 S. E. 220, held that Hodges' duties to the corporation required "a highly specialized knowledge and efficiency, and pertains exclusively to the function of setting up and supervising the policies of the employer rather than executing the routine work of the business."

In the instant case it appears that none but routine work was done without consultation and direction of the board of directors. It is true that the minutes of the directors' meetings show that the only officer who was employed on a salary was the president; but the evidence is clear that Mr. March was not paid that sum for acting as president, or anything at all for discharging that duty. It does show that he spent his entire time as manager and superintendent of the corporate business. He had had experience in the kind of work handled by the corporation, having for many years been superintendent of the city parks of St. Paul. The relators state in their brief that "March was by profession a landscape gardener and nursery operator." Had the minutes shown that the $2,590 salary was to be received by March for superintending and managing the business as landscape gardener and nursery operator there could be scarcely a doubt that he would be an employe within the meaning of the compensation act. Relators cite Weiss v. Baker-Weiss Packing Box Co. 201 App. Div. 97, 193 N. Y. S. 800 (affirmed without opinion 236 N. Y. 521, 142 N. E. 267), as supporting their contention; but that decision was rested on the proposition that by agreement Weiss was not covered by the insurance carried by the corporation. That probably is not material under our law so far as the employer is concerned; however, the policy here involved took pains to include the salary of $2,590 paid March in calculating the premiums to be paid the relator insurer. The strongest case in their favor, cited by relators, is Carville v. A. F. Bornot & Co. 288 Pa. 104, 107, 135 A. 652. That was a case of a large business wherein decedent owned one-fifth, and had a salary as vice-president of $7,000. The executive officers did work around the plant when occasion required. "The corporation was more or less of a family affair." Not so here, where it was understood that Snyder and Atkinson, not related to March, were to have practically one-third interest each, or the two a controlling interest. What comfort relators might find in Leigh Aitchison, Inc. v. Industrial Comm. 188 Wis. 218, 205 N. W. 806, 44 A. L. R. 1213, is taken away by the later cases of Columbia Casualty Co. v. Industrial

Comm. 200 Wis. 8, 227 N. W. 292, and Milwaukee Toy Co. v. Industrial Comm. 203 Wis. 493, 234 N. W. 748, both of which present facts similar to those in the instant case; but, however, less persuasive of the injured officer being an employe under the workmen's compensation act than here. In fact, the decision herein may well be rested upon the reasoning of the Wisconsin court in the two last mentioned cases.

Upon this record we are not authorized to disturb the challenged findings of the industrial commission. The award is affirmed and the writ discharged. Respondent may tax $100 as attorneys' fees in this court.