# GRACE BENDIX v. THE BENDIX COMPANY AND ANOTHER.[1]

May 19, 1944.

No. 33,735.

*R. S. Thornton* and *A. R. English,* for relator.
*Sexton, Mordaunt, Kennedy & Carroll,* for respondents.

YOUNGDAHL, JUSTICE.

*Certiorari* to review a decision of the industrial commission affirming the findings of a referee disallowing relator's claim for compen-

[1]Reported in 14 N. W. (2d) 464.

sation and other benefits for herself and child arising out of the death of relator's husband, Harvey Bendix, in an automobile accident.

Relator's claim was disallowed on the ground that at the time of the accidental injury he "was performing his function as an executive officer of The Bendix Company" and that there was no employment of Bendix by the company within the meaning of the workmen's compensation act.

It appears that for some time prior to December 1941 Bendix engaged in business as an individual, selling at retail bottled gas, radios, gas appliances, and other merchandise. He carried on such business under the name of The Bendix Company. Because of the expansion of his business and in order to facilitate financing of long-term sales contracts and to obtain additional capital for operations, Bendix incorporated his business under the same name in December 1941. In consideration of 3,000 shares of the common stock of the new corporation, the physical assets of his former business were to have been transferred to the new corporation. Although the stock was issued to Bendix, a bill of sale for the transfer of the assets was not executed until after his death.

In April 1942, pursuant to application, a policy of compensation insurance was written by respondent Hartford Accident and Indemnity Company covering the employes of the corporation. The premium therefor was calculated upon an estimated payroll of $7,000, a portion of which relator claims represented compensation paid to her deceased husband for services to the corporation.

It is undisputed that at the time of the accident on June 4, 1942, which resulted in his death the following day, Bendix was returning home from a business mission for the corporation.

Relator contends that the services performed by her deceased husband for the corporation were such as to create the relationship of employer and employe within the meaning of the workmen's compensation act, despite his controlling stock ownership and executive position held therein; that, were it to be conceded that such

relationship did not in fact exist, nevertheless respondent insurer is estopped under the facts herein from denying liability.

■ The workmen's compensation act defines an employe as "Every person in service of another under any contract of hire, expressed or implied, oral or written." Minn. St. 1941, § 176.01, subd. 8(2), (Mason St. 1927, § 4326[g][2]); but, as we stated in Donaldson v. William H. B. Donaldson Co. 176 Minn. 422, 423, 223 N. W. 772, 773, "throughout the act the purpose to include only workers as distinguished from executive officers is apparent. The act has in view wages and services." The underlying reason for excluding executive officers is apparent. They do not come within the ordinarily accepted meaning of the terms "workman" and "employe," for whose benefit the legislation was primarily enacted. They are not generally subject to hazards or risks, nor is their compensation ordinarily affected by temporary disability caused by injuries received while engaged in their employment. In the case of Erickson v. Erickson Furniture Co. 179 Minn. 304, 229 N. W. 101, we cited with approval the following statement from Supornick v. Supornick, 175 Minn. 579, 582, 222 N. W. 275, 277:

"* * * Under that statute [workmen's compensation act], only those are employes who 'perform a service for hire' and to whom some 'employer directly pays wages.' "

See also Benson v. Hygienic Artificial Ice Co. 198 Minn. 250, 269 N. W. 460.

■ In the Donaldson case, although attention was called to the distinction between executive officers and employers or workers under the compensation act, it was conceded to be the rule that the mere fact that one is a stockholder, officer, or director of a corporation does not preclude his being an employe within the act under certain circumstances. It is difficult, if not impossible, to lay down a hard and fast rule that will obtain under all circumstances in determining whether such an officer is an employe. All the facts must be considered to determine whether the ordinary incidents of the employer-employe relationship exist. Leigh Aitchison, Inc. v. Industrial Comm. 188 Wis. 218, 205 N. W. 806, 44

A. L. R. 1213. Consideration must be given to the degree of control exercised over the business, the actual business relations between the corporation and the officer, the type of services performed, the regularity thereof, the privileges indulged in with respect to working hours, the compensation received, whether the officer is subject to any control by the corporation in his activities, and other factors. Donaldson v. William H. B. Donaldson Co. *supra.*

In the instant case, Bendix owned most of the stock of the corporation issued up to the time of his death. He received his compensation from a drawing account in irregular amounts which he sometimes paid himself, and his name did not appear on the regular payroll of the corporation. He devoted the major portion of his time to sales and executive management, although the record shows that when occasion required he assisted the servicemen in repairs or installations. He determined his own hours of employment and prescribed his own duties. He came and went at will, without suggestion or criticism from anyone, and was the sole moving force in any and all business transactions. The board of directors met but once after incorporation, and on this occasion the minutes of the meeting were prepared in advance by Bendix and the remaining members of the board signed them as a perfunctory matter. He never received suggestions from the board of directors as to the advisability of entering into business contracts, and it appears that at the time of his death he was negotiating for a war contract of which the board had no specific knowledge and which it had not approved. He was in complete control. No one had the power to discharge him. None of the ordinary incidents of the employer-employe relationship existed. Under these facts, Bendix did not have the relationship of an employe to anyone, since he was the employer. "Practically he *was* the corporation and only by a legal fiction its servant in any sense." Matter of Bowne v. S. W. Bowne Co. 221 N. Y. 28, 34, 116 N. E. 364, 366. The circumstances here are strikingly similar to those in the Donaldson case, and the rule there laid down and later followed in Erickson v. Erickson Furniture Co. 179 Minn. 304, 229 N. W. 101; Benson v. Hygienic Arti-

ficial Ice Co. 198 Minn. 250, 269 N. W. 460; and Hansen v. Terminal Mfg. Co. Inc. 201 Minn. 216, 275 N. W. 611, is controlling here.

■ Relator asserts that, even though it may be held that the rule followed in the Donaldson case and succeeding cases is here applicable, nevertheless "the employer and insurer in this case have, by their conduct, estopped themselves to deny that the relationship existed here." She relies upon an endorsement attached to the policy of insurance providing *inter alia* for the payment of a premium on all salaries paid to officers and the classification of such officers' salaries in relation to the type of work performed. In the Hansen case, this court had occasion to consider whether estoppel is available under the workmen's compensation act in a situation such as this. We there pointed out that a conflict existed in the authorities, but we declined to decide the issue because there was not sufficient evidence to show knowledge on the part of the insurance company of the essential facts. Relator attempts to distinguish the Hansen case, wherein an attempt was made to create an estoppel on the strength of the auditor's examination of the books, from the instant case, where the insurance company, by its own endorsement to the policy, insisted upon the inclusion of the officers' salaries in the deposit premium. The fact that the endorsement was attached to the policy did not indicate in the instant case that the insurer had knowledge of the fact that the ordinary incident of employer-employe relationship did not exist. We believe the Hansen case to be squarely in point and decisive of the issue here. There the court determined that the facts did not justify an estoppel, since there was no knowledge on the part of the insurer that the employer was a one-man corporation and that the relationship of employer-employe did not exist. We there said (201 Minn. 218, 275 N. W. 612):

"* * * we do not find in the record evidence to support the theory that the insurer knew of the relationship existing between Hansen and his corporation. It knew, of course, that he was president, that a monthly credit was given to his account, but there is

nothing to charge it with knowledge of the existence of the facts which tended to prove that it was a personal corporation owned and conducted by the relator as a personal enterprise. * * * That being the case, there is nothing in the record to support the doctrine of estoppel if available."

That reasoning is, with equal force, applicable to the facts here. In the case at bar there is nothing in the testimony to indicate that the insurer knew of the relationship between Bendix and his corporation; that he owned practically all the stock and controlled the business himself; and that it was essentially a one-man corporation. In fact, the record here is more favorable to the insurer than it was in the Hansen case. There the insurer knew from an examination of the corporation's books by its auditor that a monthly credit was given to Hansen's account. In the instant case, the only information the insurer had was that there was an estimated annual payroll of $7,000 as disclosed in the application. The endorsement itself provided no information as to the salary or drawing account of Bendix, the president. There is nothing in the record to indicate what amount, if any, he received. Although the secretary of the corporation testified that in computing the overhead Bendix figured his salary at a maximum of $40 a week, the evidence shows that actually he did not receive a wage or regular salary at all but had a drawing account and withdrew irregular amounts.

Therefore, as in the Hansen case, the facts do not justify the application of the doctrine of estoppel, and we do not decide whether it would be available in proceedings before the industrial commission.

Affirmed.