ALICE C. DELANEY v. DAN DELANEY, INC. AND ANOTHER.[1]

February 18, 1949.

No. 34,760.

*Hall, Smith, Enkel & Hedlund,* for relator.
*Meagher, Geer & Markham,* for respondents.

MAGNEY, JUSTICE.

Certiorari to the industrial commission to review an order denying compensation for death.

---

[1]Reported in 36 N. W. (2d) 12.

The facts are not in dispute. Dan Delaney, Inc., was incorporated in 1934. The incorporators were Dan Delaney, Alice C. Delaney, his wife, and Kate Smith, the latter's sister. They constituted the first board of directors. The original officers were Dan Delaney, president, Alice C. Delaney, vice president and secretary, and Kate Smith, treasurer. Mrs. Delaney and Kate Smith paid in as capital $1,500, and 12 shares of stock at par of $100 each were issued to Mrs. Delaney and three shares to Kate Smith, presumably in proportion to the amount each contributed to the capital. Dan Delaney paid in nothing, and no share of stock was ever issued to him. Except as above, no stock was issued.

The corporation was organized to operate a liquor business in Minneapolis and did so engage until 1946. Liquor licenses were issued in its name. In connection with and as a part of its business, a floor show was conducted.

On May 19, 1945, a soldier was obstructing an entrance to respondent's place of business. Dan Delaney asked him to step out or have a table. In response, Delaney was struck and knocked down. He was injured. Within a short time he died. The industrial commission found that Delaney's death was the result of an accident. This finding is not challenged. The commission also found that Delaney was not in the employ of Dan Delaney, Inc., under a Minnesota contract of hire, and upon that finding denied compensation. The latter finding is the occasion for the review here. In order to determine whether, in our opinion, the commission was correct in making this finding, the evidence bearing on the relationship between Delaney and the corporation must be examined in detail.

As stated, Dan Delaney was one of the incorporators. He contributed nothing to the capital of the corporation, and no share of stock was ever issued to him. The minutes of the first meeting of the stockholders, held in January 1935, set out the names of the stockholders present in person. As to Dan Delaney, it is stated: "Dan Delaney, president, who is not a shareholder." Minutes of later annual stockholders' meetings contain the same notation. At

the first directors' meeting, Delaney was elected president despite his lack of ownership of even a qualifying share. He was reëlected president several times and continued to act as president until his death. Yearly meetings of the corporation were held from 1935 to 1939, inclusive. In 1939, Delaney was elected treasurer also, and Kate Smith ceased to be an officer. No stockholders' meetings were held in 1940 or 1941. The minutes of the 1942 meeting show that Kate Smith turned in her shares of stock, which were retired. She was reimbursed. Mrs. Delaney thus became the sole stockholder. The 1942 meeting was the last one held prior to Delaney's death. At the first board of directors' meeting in 1935, salaries were fixed at $100 per month for Delaney, $75 per month for Mrs. Delaney, and $50 per month for Kate Smith. At the January 1937 meeting, salaries were fixed at $50 each per week for Delaney and Mrs. Delaney and $50 per month for Kate Smith. The later records show no change in these salaries, except as to Kate Smith. At the January 1937 meeting, Dan Delaney was elected manager of the corporation, "with full power to hire and discharge necessary employees and to pay them such wages as in his opinion might be proper." Later minutes indicate his reappointment as manager. He acted as such until his death. It is apparent that Delaney performed the same duties for the corporation prior to his official appointment as manager by resolution as he did afterwards.

Until a few months prior to the opening of the Delaney Bar, Delaney and Mrs. Delaney had operated the Dyckman Hotel in Minneapolis for several years. They therefore had considerable experience in catering to the public. As manager, Delaney performed such duties as are usually connected with the operation of a business of such type and size. He bought the liquor and, as Mrs. Delaney testified, saw "that the bar was kept right and that the bartenders did their work." He met the customers and maintained order in the establishment and generally watched things. Mrs. Delaney as a musician was one of the floor show entertainers and looked after that feature of the business. Although the minutes indicate that Delaney had authority to hire or discharge the help, Mrs. Delaney as a

rule did the hiring. She usually signed the checks. He seldom did so. Sometimes she left signed checks for him to fill out. She took care of all the checks. Delaney was at the place of business seven days a week. The hours of the bar were from 9 a.m. to 1 a.m.—2 a.m. on Sundays. Except when ill, Delaney was there most of the time. Although Delaney's salary was fixed at $50 a week, he was drawing only $25 because business did not warrant any more. He was paid in cash by Mrs. Delaney. The company in 1941 or 1942 employed an auditor to keep the books. Prior to that Mrs. Delaney did this work. Mrs. Delaney signed checks for the auditor, who paid the help and other bills. Time slips were taken over to the auditor. The bank account stood in the name of the corporation. Upon occasions, Delaney and Mrs. Delaney would take cash to pay for personal purchases. These amounts were then charged on the books of the company to the personal account of each. During the last year and a half of his life, Delaney was in poor health, and he drew on the company to pay medical and hospital bills. Aside from these expenditures, his drawings for personal use did not amount to very much. At the end of each year, the amounts which each took out were totaled. Social security taxes were paid on the income of each. Each month, social security, unemployment, and withholding taxes were charged to their accounts. The corporation paid compensation insurance on Delaney. Income tax returns were made out on the salary which each received. Only salary was reported to the government. Payments used for personal purposes were never charged off the capital surplus account. They were carried over from year to year. The accumulation stayed in the business. Profit from year to year as shown on the books is still intact. According to the books, at the end of 1945 the capital surplus or net profit of the business since the corporation started to function totaled $13,738. That fund had been accumulated. In 1946 the corporation sold out its business, but it was not dissolved. No dividends were ever paid.

We have detailed fairly fully the facts in the case, which, as stated, are undisputed. Because of the close question involved, it

seemed necessary to do so. On these facts and the law applicable, we must determine whether the deceased was an employe of Dan Delaney, Inc., within the terms of the Minnesota compensation act, when on May 19, 1945, the accident causing his death occurred. The accident arose out of and in the course of his work. In order that dependents of a deceased person may be entitled to compensation under the terms of the act, the deceased person must have been "in service of another under any contract of hire, expressed or implied, oral or written." M. S. A. 176.01, subd. 8(2). We have a situation such as found in Benson v. Hygienic Artificial Ice Co. 198 Minn. 250, 255, 269 N. W. 460, 462, where we said:

"* * * Here there is no dispute as to the character and kind of service performed or as to the relation of the relator to the respondent company, and it becomes our duty to declare what law governs as to whether relator was an employe within the workmen's compensation law."

Delaney was the general manager of respondent's business. The minutes of the corporation show that by resolution he was appointed such, and the evidence is undisputed that he acted as such until his death. In a business of the size and type in which respondent was engaged, the duties of a manager are neither arduous nor involved. He bought the liquor. He supervised the bartenders. He greeted the customers. He supervised the place, and in effect acted as bouncer. His efforts in the last-mentioned activities resulted in his death. His authorized pay was $50 per week, but he received $25 per week. Unless his other connections with the corporation bar his dependents from recovery under the compensation act, it is clear that they would not be barred under the facts just recited. If another had been employed to do the work which Delaney did and he had been injured or killed while in its performance under circumstances of this case, there can be no question that he would be an employe and that recovery under the compensation act would follow. March v. March Gardens, Inc. 203 Minn. 195, 280 N. W. 644.

Delaney was the president of the corporation. He was elected as such in spite of the fact that he was not a stockholder. Whatever effect that might have in other situations, it is of no importance here. This court has held and so stated several times that an officer and stockholder of a corporation may be an employe of it within the meaning of the compensation act. Donaldson v. William H. B. Donaldson Co. 176 Minn. 422, 223 N. W. 772; Erickson v. Erickson Furniture Co. 179 Minn. 304, 229 N. W. 101; Bendix v. The Bendix Co. 217 Minn. 439, 14 N. W. (2d) 464; March v. March Gardens, Inc. 203 Minn. 195, 280 N. W. 644.

In 58 Am. Jur., Workmen's Compensation, § 150, the rule is stated:

"While the managing or higher executive officers of corporations have been held in some instances not to fall within the category of 'workmen' or 'employees,' within the meaning of those terms as used in compensation acts, the cases appear generally to hold, in the absence of any provision to the contrary, that the mere fact that one is a stockholder, officer, or director of a corporation does not necessarily preclude recovery for his injury or death, as an employee of the company, under workmen's compensation acts, but that he may be an employee, depending upon such factors as the nature of the work for which he receives pay, the proportion of the stock which he owns, and whether, in case he performs the work of an ordinary employee, such work is not merely occasional or incidental, but is his regular work."

In determining whether an officer is also an employe, it is of course evident that each case must be determined on its own set of facts, which makes it difficult to lay down a hard and fast rule to cover the various situations. The court had this in mind when in the Bendix case it stated (217 Minn. 441, 14 N. W. [2d] 465):

"* * * It is difficult, if not impossible, to lay down a hard and fast rule that will obtain under all circumstances in determining whether such an officer is an employe. All the facts must be considered to determine whether the ordinary incidents of the employer-

employe relationship exists. * * * Consideration must be given to the degree of control exercised over the business, the actual business relations between the corporation and the officer, the type of services performed, the regularity thereof, the privileges indulged in with respect to working hours, the compensation received, whether the officer is subject to any control by the corporation in his activities, and other factors. Donaldson v. William H. B. Donaldson Co. *supra.*"

The question has arisen several times in this state, and a review of the cases may be desirable.

In Donaldson v. William H. B. Donaldson Co. 176 Minn. 422, 223 N. W. 772, plaintiff owned all but two qualifying shares in a $50,000 corporation. He received $300 a month. Sometimes he overdrew and sometimes he had a balance. He controlled the company and supervised its activities. He was in executive control. No one could discharge him. The court held that plaintiff did not sustain the relation of employe to anyone. There can be no question as to the correctness of that decision.

In Erickson v. Erickson Furniture Co. 179 Minn. 304, 229 N. W. 101, deceased transferred his business to a corporation. Out of 450 shares, 414 were issued to him, the balance to members of his family. He was a director and president. His son, with 20 shares, was vice president and general manager. Deceased came and went as he pleased, but in fact, except when ill, put in full time at the store, performing manual labor. He had no salary, and no record of money drawn for personal use was kept, except as indicated by check stubs. The son's withdrawals were entered on the books. No dividends were paid and no apportionment of earnings made. After incorporation, he exercised and was accorded the same rights as to the funds which he had previously exercised as owner of the business. This court held that he was not an employe. On the facts, it seems that no other conclusion could properly have been reached.

In Benson v. Hygienic Artificial Ice Co. 198 Minn. 250, 269 N. W. 460, relator was treasurer of the company, also vice president, a mem-

ber of the executive committee, and a director. He was paid $75 per month as treasurer. One of his duties was to deposit in bank the checks and money taken in by the corporation. He held one share of stock, a qualifying share. The court held that relator's accident did not arise out of or in the course of his employment. It also went further and held that he was not an employe. It stressed the fact that he performed no services other than such as were part of his official duties as director, treasurer, vice president, and member of the executive committee. He had no fixed hours of employment and came and went as he pleased. The respondent corporation was owned by two other corporations, and no other officer owned more stock than relator. He owned 100 shares in one of the parent companies and was a director.

In Bendix v. The Bendix Co. 217 Minn. 439, 14 N. W. (2d) 464, deceased owned a business. In consideration of 3,000 shares of common stock, the physical assets of his former business were to be turned over to the new corporation. At the time of his death he owned most of the stock of the corporation. He devoted the major portion of his time to sales and executive management, although when occasion required he assisted the servicemen in repairs or installations. He prescribed his own duties. He came and went at will. The board of directors met but once, and in that case he prepared the minutes in advance. He received his compensation from a drawing account in irregular amounts, which he sometimes paid to himself, and his name did not appear on the regular payroll of the corporation. The court said (217 Minn. 442, 14 N. W. [2d] 466):

"'* * * He was in complete control. No one had the power to discharge him. None of the ordinary incidents of the employer-employe relationship existed. Under these facts, Bendix did not have the relationship of an employe to anyone, since he was the employer. 'Practically he *was* the corporation and only by a legal fiction its servant in any sense.' Matter of Bowne v. S. W. Bowne Co. 221 N. Y. 28, 34, 116 N. E. 364, 366.''

Our latest case involving the question at issue is Korovilas v. Bon Ton Renovating Co. Inc. 219 Minn. 294, 17 N. W. (2d) 502. In that case three brothers formed a corporation. Relator received 30 shares and the other two 15 shares each. Relator for several years prior to the accident was its president, secretary, and treasurer. Very little can be gathered from the few corporate records. At a stockholders' meeting in 1943 wages were set. The minutes note (219 Minn. 295, 17 N. W. [2d] 503) : "The above wages to be used as basis to the government income tax." He had no individual bank account. He alone could withdraw funds from the corporation's bank account, and he made use of this account for his own personal convenience or requirements. He handled the finances as he pleased, and no one could discharge him. The court considered the corporation largely a fiction of law. It said (219 Minn. 296, 17 N. W. [2d] 504) :

"* * * Since he was not in the service of the corporation under any contract of hire, expressed or implied, oral or written, he could not be and in fact was not its employe."

Thus in all the cases above cited, the court determined that the relationship between an officer of the corporation and the corporation itself was not that of employer-employe. The only decision in this state holding that an officer was also an employe is the case of March v. March Gardens, Inc. 203 Minn. 195, 280 N. W. 644. There, relator-employer was in the nursery and landscape business. When incorporated, respondent, the widow of deceased, transferred her home to the company for 173 shares of stock. There were 336 shares issued. Two stockholders owned 80 shares each, one owned two shares, and deceased one share. He was the president and general manager at $2,590 a year. He was not paid that sum for acting as president or anything at all for discharging that duty. Deceased was experienced in the kind of work the corporation was engaged in and the only officer who was paid a salary. None but routine work was done without consultation and direction of the board of directors. Deceased spent his entire time as manager

and superintendent of the corporate business. We held that decedent was an employe and covered by the workmen's compensation act.

Here, Delaney was elected president of the company, but he had no stock and no investment in the company. In no sense could he be considered an owner. His duties as president were insignificant. He was appointed manager and steadily spent more time at the corporation's place of business than is ordinarily required for a day's work, doing not only such work as would be expected of a manager in a small business, but also such work as would be expected from an ordinary employe in a small business of that type. This was his regular work. The salary fixed at $50 per week, only half of which was received, could hardly be compensation for the little work and responsibility that went with the office of president. It must be considered as compensation for the work he did as an employe and not as an officer. Since Mrs. Delaney was the sole owner of the stock, he had no security in his job except as their relationship continued to be congenial. Legally, she had the full say over the activities of the corporation and could determine its policies and its agent and servant personnel. At any time, if she had so desired, she could have terminated Delaney's connection with the corporation, and, as far as the record indicates, he could not have prevented it and would have had no recourse. Of course, in the main, the methods and records of this corporation were similar to those of most small corporations, but, since 1942, an expert accountant had kept the books. Every payment made as well as every income received was properly recorded. Every withdrawal made by Delaney above his salary was noted on the books of the corporation and made a charge against him; and, except for the amounts withdrawn during the last year and a half of his life because of the heavy expenses incurred for his illness, the amounts drawn by him and charged against his account were comparatively small. Respondent's main argument against the existence of an employer-employe relationship here centers on the fact that Delaney withdrew sums over and above his salary. This is not a situation such

as is found in the Erickson case, *supra,* and others, where the officer helped himself to the funds of the corporation and no record was kept in the books of the corporation. Here, every withdrawal was entered on the books of the corporation and charged to Delaney's personal account. At the end of the year, such amounts were totaled, but they were never charged off the capital surplus account. The withdrawals would not equal the difference between the salary fixed by the directors and the amount actually received as salary.

Delaney and the corporation were separate entities, both in name and in fact. He was not self-employed in fact. This is not a case where the corporation was merely the alter ego of the officer. The fundamental question here is whether Delaney was performing services for the corporation under a contract of hire. The resolution of the board of directors appointed him manager, and he acted in that capacity. A contract for hire was created. He was paid weekly compensation for his services. He was serving in a dual capacity, as president and also as manager, but all his time was occupied in activities ordinarily done by an employe and not by an officer. Corporations of this size and type are not sufficiently large to compensate full-time executives. The actual work performed as such executives would warrant the payment of only a nominal amount for such services.

Although Delaney was an officer of the company, the nature of the work for which he received pay; the fact that he owned no stock in the corporation; that because of the stock ownership he had no control over the security of his position or income; that his work was chiefly that of an ordinary employe, not merely occasional or incidental, but regular; and the other facts in the case enumerated have brought us to the conclusion that the relationship between Delaney and the corporation was that of employe and employer, and that, since his death resulted from an injury received in an accident which arose out of and in the course of his employment, compensation for death should not have been denied. The following cases in other jurisdictions are in accord with our view. Columbia Cas. Co. v. Industrial Comm. 200 Wis. 8, 227 N. W. 292; Milwaukee Toy Co.

v. Industrial Comm. 203 Wis. 493, 234 N. W. 748; Southern Surety Co. v. Childers, 87 Okl. 261, 209 P. 927, 25 A. L. R. 373; Kuehnl v. Industrial Comm. 136 Ohio St. 313, 25 N. E. (2d) 682; Matter of Skouitchi v. Chic Cloak & Suit Co. 230 N. Y. 296, 130 N. E. 299, 15 A. L. R. 1285.

Relator is allowed $250 attorneys' fees and costs in this court.

Reversed and remanded.