JACK H. COSGRIFF v. DULUTH FIREMEN'S RELIEF ASSOCIATION AND ANOTHER.[1]

February 16, 1951.

No. 35,338.

[1]Reported in 46 N. W. (2d) 250.

*Harry T. Lathrop,* for relator.

*Nye, Montague, Sullivan, Atmore & McMillan* and *Richard Hastings,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Certiorari to review an order of the industrial commission made June 2, 1950, denying employe compensation for disability and medical and surgical expenses, on the ground that he was not an employe of respondent Duluth Firemen's Relief Association on April 23, 1948, when he sustained injuries as the result of an airplane accident.

The Duluth Firemen's Relief Association was organized under M. S. A. c. 69 for the purpose of providing relief for sick, injured, and disabled members of the Duluth fire department, who are also members of the association. Article III, § 1, of its articles specifies that its management and the control of its funds shall be vested in a board of trustees. The employe here, a member of the fire department of Duluth, was a member and a duly elected trustee of the association at the time of the accident.

It had been customary for some years prior to the accident for representatives of the association to meet each year with representatives of the Minneapolis Firemen's Relief Association and the St. Paul Firemen's Relief Association to discuss common problems and to plan actions deemed to be of benefit to the associations. Such a meeting was scheduled for St. Paul on April 22, 1948. At a meeting of the Duluth association held April 7, 1948, the following resolution was adopted:

"Communication from St. Paul Association read. Moved and seconded that we send five men to St. Paul Tri-City Meeting April 22nd. Carried."

Pursuant thereto, the president of the association selected five men, including Cosgriff, to attend the St. Paul meeting.

The evidence established that the men selected to attend such meeting pursuant to agreement were compensated for the trip at the rate of $10 per day for three days, plus railroad expenses, al-

though the mode of transportation was left to the decision of the selected representatives. The employe and D. E. Leonard, secretary of the association, also selected to attend the St. Paul meeting, determined to travel to and from the meeting by air and rented an airplane for that purpose. They left Duluth on April 22, 1948, arrived in St. Paul, and attended the meeting there on that date. On the following day at 11 a. m., they commenced the return trip to Duluth with their rented plane. On this flight, at about 12:30 p. m., the plane crashed while making an emergency landing near Kerrick, south of Duluth, resulting in the injuries for which these proceedings were instituted. It is not disputed that, while on the dates mentioned Cosgriff was a regular employe of the Duluth fire department, he made the trip to St. Paul, attended the meeting there, and returned to Duluth on his own time.

The association, at the times mentioned, had in effect with the Zurich General Accident & Liability Insurance Company, its insurer, a workmen's compensation policy covering all its employes. The association operates on a coöperative basis and employs no full-time workers. Employes who handle its affairs usually contribute their time and effort without compensation, with the exception of its secretary and treasurer. The allowance of $10 a day for employe here was intended to cover his food, lodging, and incidental expenses while in St. Paul at the meeting.

Neither the articles nor bylaws of the association prescribe the duties of the trustees, nor is there anything therein which requires their attendance at meetings such as the St. Paul meeting above described. The resolution of April 7, 1948, did not specify that the representatives to be selected by the president to attend the St. Paul meeting should be chosen from the trustees. It does not appear whether or not Mr. Leonard, secretary of the association and one of the representatives selected to attend the St. Paul meeting, was such a trustee at the time.

It is the position of the insurer that a *trustee* of the association is not an *employe* thereof within the act, nor, in particular, an

executive officer thereof so as to come within M. S. A. 176.01, subd. 8(3), which extended the term *employe* to include "Every executive officer of a corporation."

In the proceedings before the commission, the referee found in favor of employe and made allowances for temporary total and permanent partial disability, as well as for medical and hospital care and attention, offset by a specified amount received by the employe in third-party litigation. On appeal to the commission, the referee's findings and determination were reversed, the commission holding that the relationship of employer and employe did not exist between the employe and the Duluth Firemen's Relief Association at the time of the accident.

■ As defined in § 176.01, subd. 8(2), of the compensation act, the term "employe" includes "Every person in service of another under any contract of hire, expressed or implied, oral or written, * * *." By L. 1947, c. 197, § 1, subd. 8 was amended by adding paragraph (3), whereby the definition of "employe" was enlarged to include "Every executive officer of a corporation." An executive officer is defined in § 176.01, subd. 17, as "any officer of a corporation elected or appointed in accordance with its charter and by-laws." Prior to the enactment of subd. 8(3), the workmen's compensation act had not covered executive officers while performing their duties as such (Bendix v. The Bendix Co. 217 Minn. 439, 14 N. W. [2d] 464; Benson v. Hygienic Artificial Ice Co. 198 Minn. 250, 269 N. W. 460; Erickson v. Erickson Furniture Co. 179 Minn. 304, 229 N. W. 101; Donaldson v. William H. B. Donaldson Co. 176 Minn. 422, 223 N. W. 772), although this court repeatedly had held that a corporate officer was entitled to the benefits of the act if injured while performing services for the corporation as a workman or ordinary employe thereof (Delaney v. Dan Delaney, Inc. 227 Minn. 572, 36 N. W. [2d] 12; March v. March Gardens, Inc. 203 Minn. 195, 280 N. W. 644).

■ M. S. A. 69.30, which designates the officers and defines the duties of the board of trustees of associations such as the Duluth association, provides:

"The officers of a relief association shall be a president, one or more vice-presidents, a secretary, and a treasurer. * * * The affairs of such association shall be managed by a board of trustees elected in the manner prescribed by the articles of incorporation of the association."

It is not disputed that employe here was duly elected to the association's board of trustees in accordance with its articles and bylaws, which in turn were adopted in compliance with § 69.30. It is clear that thereunder a trustee of an association such as this is in the same category as a director of a private business corporation. The rules applicable to the status, rights, and obligations of such a director apply with equal force to such a trustee, whose status is similar to that of a trustee in a Minnesota charitable corporation. See, §§ 309.01 to 309.05. With reference to the latter, in Ray v. Homewood Hospital, Inc. 223 Minn. 440, 444, 27 N. W. (2d) 409, 411, we stated:

"* * * The trustees of a charitable corporation, as members of its managing body, are charged with the same fidelity in the performance of functional duty as the directors of a private business corporation."

See, also, 13 Am. Jur., Corporations, § 864.

The question for determination, then, is whether under § 176.01, subd. 8(3), the term *executive officer* was intended to include a director of a corporation or a trustee of an association such as employer here. It is significant that in defining *executive officer* the legislature provided in § 176.01, subd. 17, that the term meant *"any* officer of a corporation elected or appointed in accordance with its charter and by-laws." (Italics supplied.) In determining whether or not a corporate officer was within the act, it is obvious therefrom that the legislature intended that a broad and liberal construction should be given to the term *executive officer*.

That a director is ordinarily regarded as a corporate officer is well established. As stated in 2 Fletcher, Cyc. Corp. (Perm. ed.) § 271:

"In a broad sense, there is no doubt but that a director of a corporation is an officer thereof, and he is generally held to be embraced within the term 'officers' as used in statutes."

See, also, In re Harper (D. C.) 133 F. 970; United States v. Means (C. C.) 42 F. 599; Cox v. First Nat. Bank, 10 Cal. App. (2d) 302, 52 P. (2d) 524; Walter v. Peninsula Cut Stone Co. 9 Del. Ch. 348, 82 A. 689; Bowen v. State, 189 Ind. 644, 128 N. E. 926; Commonwealth v. Wyman, 49 Mass. (8 Metc.) 247; Boyd v. Applewhite, 121 Miss. 879, 84 So. 16; Brand v. Godwin, 15 Daly 456, 29 N. Y. St. 143, 8 N. Y. S. 339, affirming 24 N. Y. St. 305, 3 N. Y. S. 807; Eastman v. State, 131 Ohio St. 1, 1 N. E. (2d) 140; State ex rel. Matre v. Bergs, 195 Wis. 73, 217 N. W. 736.

It is true there are exceptions to this rule. Thus, in the application of statutes relating to removal of officers by the directors[2]; or imposing penalties upon bank officers holding money in trust for engaging in speculative transactions[3]; or bylaws providing for determination of salaries by a board of directors,[4] there may be a distinction.

In the instant case, however, where the statute defines *executive officer* as *"any* officer of a corporation elected or appointed in accordance with its charter and by-laws" (italics supplied), it is clear that the legislature intended to include within such term the duly elected director of a corporation or a trustee, such as employe here, of an association organized under M. S. A. c. 69, and we must so hold.

■ It is not disputed that at the time of the accident employe was returning from a meeting which he had been instructed by employer to attend. It is clear therefrom that his injuries were the result of an accident arising out of and in the course of his employment in returning from this special mission. It would follow that, at the time, he was under the protection of the compensation act. See, Kiley v. Sward-Kemp Drug Co. 214 Minn. 548, 9 N. W. (2d)

---

[2]Laughlin v. Geer, 121 Ill. App. 534.

[3]Shinners v. State ex rel. Laacke, 219 Wis. 23, 261 N. W. 880.

[4]Schoening v. Schwenk, 112 Iowa 733, 84 N. W. 916.

237; Cavilla v. Northern States Power Co. 213 Minn. 331, 337, 6 N. W. (2d) 812, 815; Austin v. Leonard, Crossett & Riley, Inc. 177 Minn. 503, 225 N. W. 428.

■ It is also clear that the measurement of his compensation for the injuries sustained should be based upon the daily allotment or wage of $10. It is true that this sum was to cover his expenses for board and lodging while in St. Paul, but under § 176.01, subd. 14, allowances for such items are deemed a part of the employe's earnings and computed at their value to the employe. The statute prescribes a minimum of five days per week in computing the weekly wage for the purposes of compensation. Hence, employe's wage here should be figured at $50 per week and compensation allowances made on such wage basis. See, Olson v. Trinity Lodge, 217 Minn. 162, 14 N. W. (2d) 103. The referee's award, which was subsequently reversed by the commission, was correctly made on this scale of wages.

Reversed and remanded with directions that the findings, decision, and order of the referee be reinstated as the order of the commission, and that compensation be paid and expenses awarded to employe on the basis thereof.

Relator is allowed $250 attorney's fees over and above his costs and disbursements.