MILLER ET AL. *v.* BINKLEY MINING COMPANY.

[No. 15,204. Filed June 20, 1934. Rehearing denied October 1, 1934.]

*Stanley E. Stohr,* for appellants.

*Will H. Hays, Hinkle C. Hays, Alonzo C. Owens, John S. Taylor,* and *J. Olias Vanier,* for appellee.

WOOD, J.—Appellants appeal from an award of compensation made by the full Industrial Board, to them, as surviving dependents of one John Miller, who met his death September 28, 1933, as the result of an accident arising out of and in the course of his employment by appellee. Appellants asign as error, that the award of the full Industrial Board is contrary to law. All facts were stipulated.

Appellants were awarded compensation at the rate of $10.06 per week in equal shares, for a period not exceeding 300 weeks. They contend that the Industrial Board did not make the proper application of subdivision (c) of Sec. 73, Acts 1929, p. 537, Sec. 9518, Burns Supp. 1929, Sec. 16449, Baldwin's 1934, to the facts as stipulated, in determining the average weekly wage of the decedent, for the period of time during which he was employed by appellee previous to his death.

During the fifty-two weeks immediately preceding September 28, 1933, the coal mine of appellee, in which decedent was working and received the injuries resulting in his death, was being operated on what was termed "split time basis." The decedent was working on that basis during the same period. From October 1, 1932, to September 28, 1933, the mine worked 218 days. During that time the decedent worked 122 days and his earnings for the entire period amounted to $664.55. Obviously the Industrial Board used 218 days, or the full time the mine worked during the period of fifty-two weeks immediately preceding the decedent's death, as the basis of time on which to determine his average weekly wage. That is to say, to ascertain the number of weeks the decedent worked, the Industrial Board divided 218 days by six days, the number of working days in a week, thus making 36 1/3 weeks; then, to

ascertain the average weekly wage, the Industrial Board divided $664.55, decedent's total earnings by 36 1/3 weeks, making $18.30 which was determined to be decedent's average weekly wage, fifty-five per cent of which, or $10.06 was awarded as the amount of weekly compensation to be paid appellants.

Appellants say the Industrial Board erred in their method of computing decedent's average weekly wage, that there should have been deducted from the 218 days full time the mine worked, 96 days as lost days, thus using 122 days, the actual time the decedent worked out of the fifty-two weeks immediately preceding his death, as the basis of time on which to determine his average weekly wage. We think appellants' position is well taken. That part of subdivision (c) Sec. 73, p. 567, *supra,* applicable to the facts in this case reads as follows: "(c) 'Average weekly wages' shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of fifty-two weeks immediately preceding the date of injury, divided by fifty-two; but if the injured employee lost seven or more calendar days during such period, although not in the same week, then the earnings for the remainder of such fifty-two weeks shall be divided by the number of weeks and parts thereof remaining after the time so lost has been deducted. . . ." These provisions of the statute are mandatory in every case when the facts bring it within their purview and the average weekly wage must be determined as therein provided. Here the decedent had been in the employ of the appellee for a period of at least fifty-two weeks immediately preceding his death, he lost more than seven calendar days during that period, although not in the same week, so the second clause of the language quoted from the statute applies to the

facts in this case and must be followed in determining the average weekly wage.

The problem would work out as follows: During the fifty-two weeks immediately preceding decedent's death the mine worked 218 days. He lost 96 days during that time, leaving 122 days that he actually worked; this number of days divided by six working days for a week makes 20 1/3 weeks. Dividing decedent's total earning for the remainder of the fifty-two weeks, to wit, $664.55 by 20 1/3 weeks, makes decedent's average weekly wage $32.70. Sec. 40, Acts 1929, p. 551, Sec. 9485, Burns Supp. 1929, Sec. 16416, Baldwin's 1934, provides that the average weekly wage of an employee for the purpose of determining compensation shall not be more than $30 so the fifty-five per cent of this amount, or $16.50 would be the amount of weekly compensation to be paid to appellants. *Coble* v. *Scullin Steel Co.* (1932), (Mo.) 54 S. W. (2nd Ed.) 777; *County Coal Co.* v. *Bush* (1926), 215 Ala. 25, 109 So. 151.

The facts in the case of *Fleschner* v. *Fagg* (1932), 94 Ind. App. 685, 180 N. E. 487, and *Lenne* v. *Binkley Mining Co.* (1933), 97 Ind. App. 680, 187 N. E. 842, are not analagous to the facts in the instant case, so the method of computing the average weekly wage adopted in those cases is not controlling here.

That portion of the award of the full Industrial Board, fixing the weekly compensation of the appellants at the sum of $10.06 per week is reversed, with instructions to the full Industrial Board to fix the amount of weekly compensation to be paid to appellants at the sum of $16.50. Said award in all other respects is affirmed.