LEATHERBURY ET AL. *v.* EARLY.

[No. 16,650.   Filed March 5, 1941.]

*Chester R. Callis,* of Vevay, and *Paul R. Schnaitter,* of Madison, for appellants.

*Chester E. Bielby,* of Lawrenceburg, and *Gretchen Cole,* of Vevay, and *(Estal Bielby,* of Lawrenceburg, of counsel), for appellee.

FLANAGAN, J.—On Friday, October 10, 1937, appellants, Herschel Leatherbury and Chester Leatherbury, employed appellee, Vernon T. Early, to operate a crosscut saw in a saw mill owned and operated by them. Appellee worked until noon the next day and then worked the following day until about 2:30 p. m. when his left leg came in contact with the saw resulting in the amputation of that leg at the knee joint.

He filed his application for compensation with the Industrial Board which resulted in an award of the full Industrial Board of compensation for 200 weeks at $8.80 per week. From that award this appeal is taken.

The full Industrial Board found appellee's weekly wage to be $9.00. The correctness of this finding is the sole question here presented.

The evidence was in substance: That appellee was to receive $1.00 per day every day he worked and, in addition thereto, his room and board which are admitted to be of the value of $3.00 per week; that the average wage of laborers in that community was $1.00 to $2.00 per day plus room and board. There is no evidence that appellee has as yet been paid for the time he did work.

Appellants earnestly contend that these facts do not justify the finding of the full Industrial Board that appellee's "average weekly wage" was $9.00.

The statute providing the method of determining "average weekly wages" under the Indiana Workmen's Compensation Act, Subdivision C, § 40-1701, Burns' 1940 Replacement, reads as follows:

" 'Average weekly wages' shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of fifty-two [52] weeks immediately preceding the date of injury, divided by fifty-two [52] ; but if the injured employee lost seven [7] or more calendar days during such period, although not in the same week, then the earnings for the remainder of such fifty-two [52] weeks shall be divided by the number of weeks and parts thereof remaining after the time so lost has been deducted. Where the employment prior to the injury extended over a period of less than fifty-two [52] weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed, provided results just and fair to both parties will thereby be obtained. Where by reason of the shortness of the time during which the employee has been in the employment of his employer or of the casual nature or terms of the employment, it is impracticable to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the fifty-two [52] weeks previous to the injury was being earned by a person in the same grade employed at the same work by the same employer, or if there is no person so employed, by a person in the same grade employed in that same class of employment in the same district.

"Wherever allowances of any character made to an employee in lieu of wages are specified part of the wage contract, they shall be deemed a part of his earnings."

The period of employment in this case having been less than fifty-two (52) weeks prior to the date of the accident, one of the two following methods would have to be applied:

(a) Dividing the earnings during the period of employment by the number of weeks and parts thereof during which the employee earned wages, "provided results just and fair to both parties will be obtained," or

(b) If that method is impracticable by reason of the shortness of the period of employment or the casual nature or terms of employment, regard shall be had to the average weekly wage over the prior fifty-two (52) weeks of a person doing the same work for the same employer, or if there be none, by one doing the same class of work in the same district.

If the Industrial Board, under the evidence, could have arrived at its finding by application of either of the above methods, that finding will not be disturbed by this court.

"Average weekly wage" should not be confused with "average weekly earnings." If a person, employed on the basis of $6.00 per week, works only two days of one week, his week's earnings are only $2.00. But he is still a $6.00-a-week man and his "average weekly wage" for that week would be $6.00. If, for the next week, his employer shifts him to a $12-a-week job, he becomes a $12.00-a-week man; and during that particular week, his "average weekly wage" is $12.00 no matter how many days he may work nor what his resultant actual earnings are.

If the rate per day were the same over any given period, no difficulty would be encountered in determining the "average weekly wage." It would always be the same, no matter how many days an employee actually worked. If a person received $3.00 per day every day he worked, his "average weekly wage" would be $18.00 regardless of how many days he worked during the given period.

However, the rate per day, or earnings per day may change as in the case above referred to wherein a person was employed at $6.00 per week one week and then shifted by his employer to a $12.00-a-week job during the next week. Assuming that he worked two days during the week he was on the $6.00-per-week job

and three days during the week he was on the $12.00-per-week job, his total earnings were $8.00. Dividing this sum by two, the number of weeks covered in the period of employment, we find his average weekly *earnings* to be only $4.00. But to determine his average weekly *wage* we apply the formula provided by the above statute and explained in *Miller* v. *Binkley Mining Co.* (1934), 99 Ind. App. 257, 190 N. E. 886; and *Holton* v. *Jackson Hill Coal and Coke Co.* (1935), 101 Ind. App. 231, 198 N. E. 805.

The total earnings of $8.00 are divided by five, the total days worked. This gives an average daily wage of $1.60. Multiplying this average daily wage by six we find the average weekly wage to be $9.60.

In the instant case the appellee worked parts of two days at $1.00 per day. There is no variance in his daily rate or earnings and we find his average weekly wage by multiplying $1.00 by six days and adding thereto $3.00, the value of his room and board, which gives us $9.00, the same finding as that of the Industrial Board.

Since this conclusion could be arrived at by using the first formula above set forth, we need not consider the second unless the result is not "just and fair to both parties."

The question as to whether "results just and fair to both parties" could be obtained is one of fact for the Industrial Board. The shortness of the period of employment alone would not necessarily be conclusive of unfairness or the statute would have so provided.

In an instance where a person was employed on piecework for a very short period of time, and during that period encountered a very difficult job, whereby his earnings for that time were far below normal for that

type of work, we can readily see that it would be unfair to such employee to use his earnings as the basis for determining his average weekly wage. In the same example, if the employee encountered an unusually easy job whereby his earnings were far above normal for that type of work, it might be unfair to the employer to use such earnings as the basis for determining his average weekly wage. In such cases the statute has provided another method.

But no such situation exists here. Appellee was employed at $1.00 per day and board and room of the admitted value of $3.00 per week. Inasmuch as he was working on Sunday when the accident occurred there might be some question as to whether he was employed for a seven-day week so as to make his weekly wage $10.00. But this question is not presented and we are not called upon to decide it.

To sustain their contention, appellants call attention to the case of *McCoskey* v. *Armstrong* (1933), 98 Ind. App. 23, 187 N. E. 901. The situation there was entirely different, and that case is not in point here. In that case the employee, over the period of the year, "was paid at divers times the total sum of $48.50." On the day of the accident he was paid for his services the sum of $3.00. But there was no evidence that $3.00 per day was the basic rate per day at which he was paid throughout the year. The total amount of $48.50 may have been made up of employment on some days at the rate of $5.00 or $3.00 or $1.00. The court there further held that the employment there came within the class of those where, "by reason of the *casual nature or terms of employment*," it was impracticable to compute the average weekly wage by the method here used.

Award affirmed, with the statutory five per cent increase.

NOTE.—Reported in 32 N. E. (2d) 99.