CITY OF KENDALLVILLE *v.* TWINING

[No. 28,178. Filed April 5, 1946. Rehearing Denied May 1, 1946.]

230

*White, Wright & Boleman* and *George C. Forrey III*, all of Indianapolis, and *Glenn E. Thrapp*, of Kendallville, for appellant.

*Porter D. Crowell*, of Kendallville, and *Arthur Parry*, of Fort Wayne, for appellees.

STARR, J.—This is an appeal from an award of the Industrial Board of Indiana. The facts in this case are undisputed. The appellees are the widow and minor daughter of William Twining, formerly an employee of the appellant as a volunteer fireman, who was killed in an accident arising out of and in the course of his employment as such volunteer fireman.

The employment of the decedent by the appellant as a volunteer fireman had extended over a period of more than a year prior to his injury. The decedent's employment was not on the basis of a fixed salary but he received a wage of $1.50 for the first hour or part of an hour on fire alarms within the corporate limits of appellant, and $1.00 an hour for all other hours or parts of hours for which he worked as a volunteer fireman. Under the terms of his employment he was obligated to answer fire alarms when they came, on any day of the year, Sundays and holidays included, but was required to work only on the occasion of a fire alarm. At all other times he was free to, and did, engage in other separate and different employment, being so employed immediately preceding his injury, at the Sinclair Refining Company, and as such employee he earned approximately $225 per month which was his principal income. During the 52 weeks preceding his death appellant was required to work as

such volunteer fireman on 54 days and upon the remaining 310 days of these 52 weeks he was not required to work because no fires occurred on these days and his employer, the appellant, had no fire extinguishing to do. During this period the decedent earned and was paid under his contract of employment by the appellant the sum of $138.50.

Upon the foregoing facts the industrial board found that the decedent's average weekly wage as such volunteer fireman was $17.96. This amount was arrived at by treating the 310 days of the said 52 weeks, upon which he was not required to work, as lost days, and dividing the seven and five-sevenths weeks, being the period of time the services were performed by the deceased, into the total amount earned and paid to the deceased during said 52 week period.

Appellant's sole contention is that the industrial board erred in treating said 310 days, in which deceased was not required to work, as lost days in computing decedent's average weekly wage. The method for arriving at such average weekly wage is provided for under § 40-1701 (c), Burns' 1940 Replacement being part of the Workmen's Compensation Act. This section reads in part as follows:

"(c) 'Average weekly wages' shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of fifty-two (52) weeks immediately preceding the date of injury, divided by fifty-two (52) ; but if the injured employee lost seven (7) or more calendar days during such period, although not in the same week, then the earnings for the remainder of such fifty-two (52) weeks shall be divided by the number of weeks and parts thereof remaining after the time so lost has been deducted. Where the employment prior to the injury extended over a period of less than fifty-two (52) weeks, the method of dividing the

earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed, provided results just and fair to both parties will thereby be obtained . . ."

It is our opinion that the board erred in considering the 310 days during the 52 week period immediately preceding the decedent's injury on which he was not called upon to serve as a volunteer fireman, as lost days as contemplated by the above set out statute. We agree exactly with what was said by Crumpacker, J., on certain phases of this case when the same was before the Appellate Court of Indiana (1945), 64 N. E. (2d) 45, 49. We, therefore, adopt as our own the following language employed by him in a portion of his dissenting opinion in which Draper, J., concurred.

"Under his contract with the appellant the decedent was employed and paid on an hourly basis and was required to work only on the occasion of a fire in the city of Kendallville. At all other times he was free to and did engage in other work, being employed, during the 52 weeks immediately preceding his injury, by the Sinclair Refining Company at which employment he earned approximately $225 per month. Experience apprised both the decedent and the appellant that there would be many days during the year in which there would be no fires in the city of Kendallville and . . . in contemplation of both parties the contract here involved was for part-time services only and . . . days upon which there were no fires were wholly outside its terms and therefore cannot be considered as lost. The fact that work days were not definite and certain and the decedent was required to hold himself in readiness at all times to answer a fire alarm does not alter the nature of the contract. In the case of *In re Wheeler* (1920), 73 Ind. App. 145, 126

N. E. 689, this court held that the question of whether those Sundays upon which no work was done constituted "lost days," within the meaning of the statute, depends on whether the employee's engagement required work on Sundays and where he was not engaged to, and does not work on intervening Sundays, such failure to work cannot be counted as lost time in ascertaining his average weekly wages. Sundays are definite and fixed while fires in a community are speculative and uncertain but that distinction between the Wheeler case and this does not alter the fact that the decedent's contract did not engage him to work, nor did he work, on those days upon which no fires occurred . . . we find that the City of Kendallville worked at the business of extinguishing fires 54 days during the 52 weeks immediately preceding the decedent's death. As he lost none of these days his average weekly wages must be computed by the first provision of § 40-1701, Burns' 1940 Replacement, which reads as follows: ' "Average weekly wages" shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of fifty-two (52) weeks immediately preceding the date of injury, divided by fifty-two (52) ;' The decedent's earnings were $138.50 during the period involved which, divided by 52, fixes his average weekly wages at $2.66.

"It might be said that the appellant was engaged 365 days of the year in fire prevention but the decedent's employment had nothing to do with that. He performed no services in that regard nor was he hired to do so. He contracted to work only when there was a fire and it is difficult to see how the 310 days during which there were no fires and during which he did not contract to work can be considered lost days . . . under the contract of employ-

ment his employer could not demand or control his services except in the event of a fire and the additional fact that there were only 54 days during the 52 weeks immediately preceding his injury when the appellant had any right to any part of his time or to control his actions in any manner whatsoever. This case is not analogous to that in which an employer buys all a man's time whether he uses it or not. Here the decedent's time, when not actually engaged in extinguishing fires, was his own and he used it to good advantage by the performance of services to another for which he earned $225 per month . . . I realize that compensation to the appellees on this basis is a mere pittance for the loss of a husband and father upon whom they were wholly dependent. It is apparent that the legislature also realized that the compensation provided by the Workmen's Compensation Act to volunteer firemen would ordinarily amount to little and as a supplement to such compensation it provided that cities operating volunteer fire departments must carry insurance in an amount of not to exceed $3500 for the benefit of each of such firemen or his dependents in the case of injury or death while in the performance of his duties. I construe the passage of this insurance act as strong indication of legislative intention that a volunteer fireman's average weekly wages should be determined on the basis of crediting as "lost days" only those days upon which there were fires and the fireman, through no fault of his own, was unable to answer the call . . . The appellees in this case have collected maximum insurance in the sum of $3500 and while that fact is unimportant in determining the decedent's average weekly wages it does indicate that when such wages are computed on the basis for which I contend, and on

the basis I believe the legislature intended, the entire picture does not shock the conscience."

The appellees in support of the award herein, rely upon *Miller* v. *Binchley Mining Co.* (1934), 99 Ind. App. 257, 190 N. E. 886 and *Holton* v. *Jackson Hill Coal and Coke Co.* (1935), 101 Ind. App. 231, 198 N. E. 805.

The first of these decisions is confusing. The employee was a coal miner. The mine in which he was employed worked 218 days out of the 52 week period immediately preceding his injury; he lost 96 days during the time that the mine was worked. The decedent was working on a "split time basis" during the 52 weeks immediately preceding his death. Without explaining the deceased's working status or contract of employment, the court merely stated the number of lost days. Also, the court included as lost days the days when the mine was not worked, although at first reading it would appear that the period during which the mine was idle did not enter into the equation.

As to each of these decisions we entirely approve what was said by Judge Crumpacker in his above mentioned opinion, as follows: "In *Holton* v. *Jackson Hill Coal & Coke Co., supra*, . . . the court applied the rule announced in the Miller case. In doing so the court said in reference to the employee: 'The appellant began working for the appellee August 23, 1926, and was in the continuous employment of the appellee from that date until his injury July 7, 1933, *never working at any other place during that period of time.*'" (My emphasis.) Again in the course of its opinion the court said: "During the entire time from August 23, 1926, until the date of his injury, his employment or occupation that which engaged and occupied his time was

mining coal for appellee. *Appellant had no other employment or occupation.*" (My emphasis.) These facts seem to have controlled the court's conclusion that days when the mine was shut down for the purpose of negotiating a new contract with a labor union should be considered as lost days. It cannot be said in the present case that serving the appellant as a volunteer fireman was that which engaged and occupied the decedent's time and that he had no other occupation. In truth the situation is quite the contrary. The facts involved in the mining cases and the contracts controlling the rights and liabilities of the parties are so radically different from those of the case at bar that I cannot consider these decisions as controlling here nor as throwing much light on the present problem.

This cause is remanded to the industrial board with instructions to restate its award on the basis of average weekly wages in the sum of $2.66.

O'Malley, J., Gilkison, J., dissent.

NOTE.—Reported in 65 N. E. (2d) 846.

## DISSENTING OPINION

O'MALLEY, J.—With all due respect to the majority members of this court, I feel that in this particular case they are in error.

The compensation act is remedial, to compel industry to bear part of the loss occasioned by injury or death of persons it employs. Its further purpose is to lift some of the "loss-load" from the backs of the widows and dependent children of workmen who lose their lives while working at their job.

It seems that a liberal construction of the act is required if it is to approach the performance of the purpose and function intended by those who fostered

it. Unless it is liberally construed, we have not bettered the position of dependents or aided society in bearing the loss of earnings in the home of the injured or deceased workingman.

For many years, an appeal from the Industrial Board could not go beyond the jurisdiction of the Appellate Court. It is only in recent years that a transfer to this court has been permitted. During the better part of 30 years of the existence of this act, the legislature looked to the opinions of the Appellate Court as the guide to future legislation on the subject. The words of the statute are of doubtful import if they are such as to permit two or more constructions. Likewise the wording is of doubtful import if extraneous matters enter into this court's interpretation. But where such is the case this court will give due consideration to the interpretation of the statute by the department of government and the intermediate court. If the interpretation has been long recognized, it may be inferred that the legislature has adopted such construction. *Citizens T. & S. Bank* v. *Fletcher American Co.* (1934), 207 Ind. 328, 190 N. E. 868, 192 N. E. 451.

The subject of the instant case does not present a new question but one that for almost 30 years had a settled position in the law of this state. It has been held time and again that in construing the particular section involved in this case (§ 40-1701, Burns' 1940 Replacement), that a question of fact with considerable discretion to make the award fair and equitable was lodged in the fact finding board. This section was re-enacted without substantial change in the 1933 session of the legislature. At that time there was fresh in the minds of the members of the legislature, the case of *Fleschner* v. *Fagg* (1932), 94 Ind. App. 685, 180 N. E. 487, which determined this very point.

Under the decisions of this court it must be inferred that the legislature adopted that construction when the section was re-enacted in 1933 with no substantial change.

The same rule of construction was followed in *Miller* v. *Binkley Mining Co.* (1934), 99 Ind. App. 257, 190 N. E. 886, and *Lenne* v. *Binkley Mining Co.* (1933), 97 Ind. App. 680, 187 N. E. 842, and by many cases since that time. In none of them did the Industrial Board or the Appellate Court declare the rule to be as announced in the instant case. The construction is too narrow and will have the effect of throwing the burden of the loss on the surviving members of the family, no matter how needy and helpless they may be.

It may be said that because this was not the work by which decedent made the greater part of his living, that the award is sufficient. However, that is reading into the act words that were not placed there by the legislature. If two men under identical contracts were doing the same work for the appellant, one of whom worked on two jobs and one of whom was satisfied with the meager earnings of the part time job and both were killed at the same time, we would get different answers for each of these cases under the rule this day adopted by the majority opinion. Such was not the intent of the legislature and no such intent is expressed in the act. It should not be read into it by this court.

The cause should be affirmed.

Gilkison, J., concurs in this dissent.

NOTE.—Reported in 65 N. E. (2d) 846.