324 So.2d 884 (1975)
Bessie I. HALL, Plaintiff-Appellee,
v.
Wayne JOINER, Sr., Defendant-Appellant.
No. 5257.
Court of Appeal of Louisiana, Third Circuit.
December 24, 1975.
Rehearing Denied January 28, 1976.
*885 Bolen, Halcomb & Bolton by Roy S. Halcomb, Jr., David A. Sheffield, Vincent Hazelton, Alexandria, for defendant-appellant.
Kenneth E. Doggett, Alexandria, for plaintiff-appellee; Wayne D. Joiner, Sr., in pro per.
Before CULPEPPER, DOMENGEAUX and PAVY, JJ.
DOMENGEAUX, Judge.
This is a workmen's compensation suit instituted by Mrs. Bessie I. Hall against her employer, Wayne Joiner, Sr., in which instance the District Court awarded the plaintiff compensation benefits for one hundred weeks under the provisions of LSA-R.S. 23:1221(4)(i)[1] plus medical expenses, but denied her claim for penalties and attorney's fees. From the adverse judgment defendant has appealed, and plaintiff has answered the appeal asking that the judgment be modified to include penalties, interest, and attorney's fees.[2]
Defendant owned and operated an eleven-apartment complex at Hot Wells, Rapides Parish, Louisiana. He hired plaintiff to manage the apartments. As compensation for her services she was allowed to live in one of the apartments and received free rent and utilities in addition to a commission-type salary based on the rental receipts of the apartment complex. As manager, it was plaintiff's responsibility to rent the apartments, receive the rent from the tenants, and clean and maintain the premises. As such, she was required to use an electric vacuum cleaner and plug and unplug electric window air conditioners. The trial judge found that plaintiff was on duty seven days a week, 24-hours a day.
Plaintiff contends that she was injured while mowing grass at defendant's apartments on May 10, 1973. She alleged that a rock flew out of the lawn mower and struck her in the eye. Her daughter verified the fact that her mother did receive an injury to the eye on or about May 10th. Defendant was notified of the accident. A *886 neighbor took Mrs. Hall to the Rapides General Hospital on May 16th, and observed that plaintiff's right eye was swollen, almost closed, and appeared to him to be a very painful injury. Defendant himself testified that he observed Mrs. Hall wearing sun glasses, and this was verified by his sons, Wayne, Jr., and Jerry.
Both sides are at odds as to whether or not the plaintiff was required to mow the grass while she was employed by the defendant. She claims that it was part of her duties and the defendant claims otherwise. The trial judge found that on some occasions the plaintiff did in fact now the grass.
The trial judge did not determine whether mowing the grass was a part of her employment. Rather, he suggested that whether the plaintiff was injured as a result of the rock being hurled by the lawnmower operated by her or was injured as a result of someone else operating the lawnmower or even if someone else had thrown a rock and hit Mrs. Hall in the eye, the injury would still have been compensable within the meaning of the compensation statute since it occurred at the place of employment during working hours.
We conclude, as did the trial judge, that the plaintiff was injured in an accident arising out of and in the course of her employment. In the recent case of Lisonbee v. Chicago Mill & Lumber Company, 278 So.2d 5 (La.1973)[3] the question of the legal tests involved were considered as follows:
Section 23:1031 of the Workmen's Compensation Act provides that the employer shall pay compensation to the employee who `receives personal injury by accident arising out of and in the course of his employment.' The terms arising out of, and in the course of are not synonymous. The former suggests an inquiry into the character or origin of the risk, while the latter brings into focus the time and place relationship between the risk and the employment. The two requirements cannot, however, be considered in isolation from each other. A strong showing by the claimant with reference to the arise-out-of requirement may compensate for a relatively weak showing on the during-course-of requirement, or vice versa. As a corollary it follows that whenever the showing with respect to both requirements is relatively weak a denial of compensation is indicated. Malone, Louisiana Workmen's Compensation, §§ 162, 192.
These concepts are developed from cases interpreting the spare phrases arising out of the employment, and in the course of the employment. But the question of which risk shall be included within the act and which shall be excluded cannot be decided by phrases. Each case must be determined from its own facts. Kern v. Southport Mill, 174 La. 432, 141 So. 19 (1932); Myers v. Louisiana Ry. & Nav. Co., 140 La. 937, 74 So. 256 (1917).
An accident occurs during the course of the employment when it occurs during the time of the employment and at a place contemplated by the employment. Kern v. Southport Mill, supra....
. . . . . .
To `arise out of' the employment, the accident must be the result of some risk to which the employee is subjected in the course of his employment and to which he would not have been subjected had he not been so employed. Time, place and circumstance must determine this. Kern v. Southport Mill, supra. Add to this a consideration of the character of the risk, which means `The accident must be the result of some risk to *887 which the employee is subjected in the course of his employment and to which he would not have been subjected had he not been so employed.' ..."
In Kern v. Southport Mill, 174 La. 432, 141 So. 19 (1932), the Supreme Court stated:
"In determining, therefore, whether an accident `arose out of' the employment, it is necessary to consider only this: (1) Was the employee then engaged about his employer's business and not merely pursuing his own business or pleasure; and (2) did the necessities of that employer's business reasonably require that the employee be at the place of the accident at the time the accident occurred?"
See also Powell v. Gold Crown Stamp Company, 204 So.2d 61 (La.App.2nd Cir. 1967), where the employee was shot by her estranged husband while at work, and the court found this to be a compensable injury, since it occurred at the place of employment, during the time of the employee's employment therein.
We also conclude that plaintiff's employment was hazardous within the intendment of the Louisiana Workmen's Compensation Act. Based on the case of Fontenot v. J. Weingarten, Inc., 259 La. 217, 249 So.2d 886 (1971), plaintiff is covered under the Compensation Act since her employment required that she come into contact with and operate electrical appliances, i. e. a vacuum cleaner and window air conditioning units. Our review of the record amply sustains plaintiff's position that the requirements of her employment necessitated that she operate and be exposed to the electrical appliances frequently enough so as to meet the test in Fontenot, supra. See also Shepherd v. Fort Sherwood Apartments, 270 So.2d 298 (La.App.1st Cir. 1972), writ refused 272 So.2d 375 (La.1973) "On the facts found by the Court of Appeal we find no error of law in its judgment." See also Robbins v. Caraway-Rhodes Veterinary Hospital, 315 So.2d 688 (La.1975).
Mrs. Hall was examined by Dr. Lisso Nachman, a board certified ophthalmologist, who treated her until March 6, 1974, at which time she was discharged. Doctor Nachman's examination indicated that the plaintiff had received a traumatic injury to her right eye. The cornea was torn and the eye had become severely infected. The doctor testified:
"Apparently when the rock hit her, taking a portion of the cornea with it, it left a defect which became severely infected. The corneal ulcer proceeded to a point where she had what's technically and properly known as a hypopion (h-y-p-o-p-i-o-n), which means that the interior chamber of the eye which is filled with, in a normal state, a clear fluid like water. The clear fluid is aqueous. This was filled with pus to the point where she could not see and of course, the eye was quite painful...."
Doctor Nachman, in response to a specific question answered as follows:
"Question: `Dr. Nachman, was there an apparent tear, cut or rip in the cornea when you first examined the lady? Some evidence that she had suffered a trauma as opposed to some infection of the eye?'
Answer: `Yes. There was a defect which was irregular. By the time I saw her, actually, the discrete edges of a laceration or a cut had just melted away, the infection was so severe. The ulcer that I found and earlier described essentially is the defect and the surrounding area was so severely infected that it wound up that the cornea presented pretty much with a defect and behind this defect protruding into the interior chamber a pocket of pus and the interior chamber filled with a pusy exudate or pusy material. There is very little doubt that the rock injury that she described corolates [sic] beautifully with the lesion that she walked in the office with.' (Emphasis added.)"
*888 Doctor Nachman indicated that plaintiff would be left with a scar and an irregularity in the cornea of the eye, which would impede light going through and produce an irregular stigmatism, and that she would never have any practical vision of her right eye. The doctor estimated that plaintiff lost approximately 80% of the vision of her right eye as a result of the accident, which in his view left her with a legally blind eye. He opined, however, that she could still perform the duties required by her prior occupation, but that because of employers' reluctance to hire handicapped people, she would be unable to do the kind of work she was doing before.
Plaintiff was examined at the instance of the defendant by Dr. Eustis Wilson, on April 9, 1974, almost one year following the accident. Doctor Wilson is also an ophthalmologist but is not board certified. His opinion, contrary to Doctor Nachman's was that plaintiff could adequately see in the right or injured eye and that her complaints of blindness in that eye were unfounded. He estimated that she has a 20/50 vision of the right eye.
Confronted with opposite medical opinions, the District Judge stated:
"There is thus a diametrically opposite medical opinion in this case, and the Court must conclude which of the two physicians it is to believe, the treating physician or the examining physician. The law on the point was recently stated in the case of Oliver v. T. & C. Contractors, [La.App.,] 264 So.2d 225, at page 227, wherein the Court stated:
'In establishing disability in a workmen's compensation case, the testimony of a treating physician who has the benefit of repeated examinations and sustained observation is accorded greater weight than that of a physician who has seen the claimant but once, and then for only purposes of litigation. D'Avy v. Bituminous Casualty Company, 255 So.2d 645 (La. App. 3 Cir. 1971); also Moulard v. Massman Construction Company, 209 So.2d 742 (La.App. 3 Cir. 1968) and cases cited therein.'
In the instant case, the treating physician is Dr. Nachman and his conclusion that as to the extent of the injury will be accepted by the Court. Accordingly, we must find that Mrs. Hall has lost 83% [sic] of the use of her right eye."
There is no error in the District Court's acceptance of the medical testimony of Doctor Nachman. We might add that we were likewise impressed with Doctor Nachman's testimony.
The trial judge correctly found that plaintiff was not entitled to benefits for total and permanent disability. He, instead, awarded benefits for 100 weeks under the provision of LSA-R.S. 23:1221(4)(i). For all intents and purposes, plaintiff has lost the right eye within the meaning of the latter schedule. She has lost 80% of the vision in that eye and will never have any practical vision therefrom. This is tantamount to having no eye at all.
The record reveals that plaintiff worked for defendant 91 days, from April 10, 1973, to July 9, 1973, a total of 13 weeks. The trial judge found that plaintiff was employed under an agreement by which she was to receive a commission of 15% of the net rental receipts for the first month and a 25% monthly commission thereafter. In addition, plaintiff was given the use of an apartment and free utilities, the value of which amounted to $90.00 per month. In computing the rate of compensation the trial judge divided plaintiff's total income from this employment by the total number of weeks (13) which she worked for the defendant. He thus reached the conclusion that her weekly income was $39.61 and based her compensation upon 65% of that figure, awarding her the amount of $25.75 for 100 weeks.
*889 We find error in the trial judge's calculations in that he misapplied the statutory formula applicable to this situation. LSA-R.S. 23:1021(11)(d) as amended, provides that if an employee is not paid hourly, monthly, or annually and is employed on a "unit, piece work, or other basis" the wages shall be determined by computing the total amount of wages for the 26-week period immediately preceding the accident. If the employee has worked less than 26 weeks preceding the accident the wages shall be:
"... his gross earnings from the employer for the period immediately preceding the accident, divided by the number of days the employee actually worked for the employer during said period and multiplied by five."
Since the plaintiff worked for thirty days prior to her accident we must determine the total amount of her gross earnings during that period, divide by the number of days she worked, and multiply by five. The record reveals that the plaintiff was paid a commission of $121.00 for that thirty day period preceding her accident and was given the use of an apartment and free utilities for that period. The total value of gross earnings then during the period preceding the accident was $211.00, which after necessary computation, reveals a weekly compensation rate of $22.85 for one hundred weeks, and not the figure of $25.75 as found by the trial judge.
The trial judge denied plaintiff's claim for penalties and attorney's fees. In so ruling, he found that defendant's actions were not arbitrary and capricious in failing to pay compensation benefits. The trial judge obviously concluded that the defendant's refusal to pay in this case was based on both the non-occurrence of the accident and a lack of causal connection between the accident and the disability. Starkey v. Louisiana Hatcheries, Inc., 262 So.2d 165 (La.App. 1st Cir. 1972); Hebert v. South Louisiana Contractors, Inc., 238 So.2d 756 (La.App.1st Cir. 1970); Davis v. Zurich Insurance Company, 210 So.2d 620 (La.App.2nd Cir. 1968); Martin v. Travelers Insurance Company, 200 So.2d 141 (La.App. 1st Cir. 1967). We will not substitute any opinion which we may have to the contrary for that of the District Judge on this factual finding.
In conclusion, appellant raises two procedural questions alleging error on the part of the trial court. On the first issue, appellant suggests that he was prevented by the District Court from taking the deposition of one Gary Whit. The transcript indicates that a minute entry on October 21, 1974, showed that the defendant had abandoned his request for the taking of the deposition, and consequently we deem the issue moot. Secondly, appellant complains that he was not granted a continuance of the trial on the merits, so that he could obtain the testimony of the said Whit, and further that he was erroneously denied the right to introduce Whit's written statement into evidence.
This case was postponed many times. The record is clear that the trial judge bent over backwards in an effort to protect the rights of the unrepresented defendant after his two previous attorneys had withdrawn from the case. We find no error in his denying defendant's final efforts to delay the trial. Neither was the trial judge in error in excluding the socalled written statement of Gary Whit.
For the above and foregoing reasons the judgment of the trial court is amended so as to award plaintiff weekly compensation benefits of $22.85 for 100 weeks with interest at the rate of 7% per annum on each past due payment from its due date until paid. In all other respects the judgment of the trial court is affirmed. Costs of this appeal are assessed against defendant-appellant.
Affirmed, as amended.
NOTES
[1] LSA-R.S. 23:1221(4)(i). For the loss of an eye, 65 per centum of wages during 100 weeks.
[2] Defendant was uninsured and in the early stages of this litigation was represented by an attorney who ultimately withdrew as counsel. Later defendant was represented by another attorney who likewise withdrew as counsel. On the trial of this matter the defendant represented himself. A review of the record indicates that defendant, although a non-lawyer, was competent in his self-representation. After trial, and on defendant's application to the Alexandria Bar Association, the latter appointed an attorney to represent him, pursuant to its guidelines for appointed counsel. The appointed attorney applied for a new trial which was subsequently argued and denied, and said attorney has continued to represent the defendant on this appeal.
[3] In Lisonbee recovery was denied, but only because the decedent, who was fatally shot, had left the premises of his employment contrary to the instructions of the employer.