**BLAKE STEVENS CONSTRUCTION and Hartford Insurance, Plaintiffs,**

v.

**Dwinn A. HENION, Mother of Bari Lyn Blair, daughter of Barry A. Blair, Deceased, and the Industrial Commission of Utah, Defendants.**

No. 19006.

Supreme Court of Utah.

Jan. 30, 1985.

Tim C. Houpt, Salt Lake City, for plaintiffs.

Henry K. Chai, II, Salt Lake City, for defendants.

HOWE, Justice:

Plaintiff seeks review of an Industrial Commission decision that for the purpose of determining dependent death benefits under the Utah Workers' Compensation Act, U.C.A., 1953, §§ 35–1–1 to –101, the decedent's "average weekly wage" included an out-of-town subsistence allowance.

Barry A. Blair resided in Salt Lake County, Utah, and worked for plaintiff Blake Stevens Construction in the Salt Lake valley area. In November 1981, his employer assigned him to work at a jobsite near Green River, Wyoming. Because this work was distant from Salt Lake County, he regularly traveled to Green River on Monday and returned home on Friday night. While working in Green River, he received from plaintiff a $32.50-per-day subsistence allowance in addition to his regular wage of $5.50 per hour for a 35-hour work week. Blair died in an industrial accident in January of 1982 while working in Green River for plaintiff. He left one dependent, Bari Lyn Blair, who is also the daughter of defendant Dwinn A. Henion.

After a hearing, an administrative law judge awarded Bari Lyn Blair dependent death benefits under the Workers' Compensation Act. The death benefits were based

on an average weekly wage of $355, representing $192.50 in hourly wages and $162.50 in subsistence allowance. Plaintiff contested before the Industrial Commission the inclusion of the subsistence allowance, but the Commission unanimously upheld the administrative law judge's ruling.

Our statutes base the amount of compensation to be awarded an injured employee (or his dependents in the event of his death) on his average weekly wage at the time of his injury or death. However, the statutes provide no definition of what constitutes "wages." We note that the method of arriving at the average weekly wage under U.C.A., 1953, § 35–1–75 closely parellels section 19 of the Model Compensation and Rehabilitation Law (Revised), published by The Council of State Governments. However, the model act differs from section 35–1–75 by providing a definition of "wages." Under the model act's section 2(n), the word "wages" is defined as follows:

"Wages" means, in addition to money payments for services rendered, the reasonable value of board, rent, housing, lodging, fuel or similar advantage received from the employer, and gratuities received in the course of employment from others than the employer.

In contrast, the Utah statute gives no specific definition of "wages." Nevertheless, by section 35–1–75 the Industrial Commission is vested with broad authority to fairly determine the average weekly wage:

(1) Except as otherwise provided in this act, the average weekly wage of the injured employee at the time of the injury shall be taken as the basis upon which to compute the weekly compensation rate and shall be determined as follows:

. . . .

(3) If none of the methods in subsection (1) will fairly determine the average weekly wage in a particular case, the commission shall use such other method as will, based on the facts presented, fairly determine the employee's average weekly wage.

In *Craig Burnham Produce v. Industrial Commission,* Utah, 657 P.2d 1354 (1983), we construed section 35–1–75(3) to empower the Industrial Commission to consider an employee's earnings both from his full-time employment and from his part-time employment in fairly determining his average weekly wage. There, the employee's income from both jobs was used in computing benefits due him from his part-time employer when he sustained an injury at his part-time employment. A similar method of determining the average weekly wage is found in section 19(i) of the model act. However, that method was not specifically adopted by the Utah Legislature. Nevertheless, we held that the Legislature had provided for this situation by granting generous powers to the Industrial Commission in section 35–1–75(3) to determine what may be included in "wages" to enable the Commission to fashion a method that would, "based on the facts presented, fairly determine the employee's average weekly wage." U.C.A., 1953, § 35–1–75(3).

In some states, there are statutes which provide that certain benefits furnished by an employer to an employee shall be included in the determination of "wages" for the purpose of making compensation awards to injured employees. *Waldroupe v. Kelley,* 189 Kan. 99, 367 P.2d 77 (1961); *Leslie v. Reynolds,* 179 Kan. 422, 295 P.2d 1076 (1956); *Cosgriff v. Duluth Firemen's Relief Association,* 233 Minn. 233, 46 N.W.2d 250 (1951); *Leatherbury v. Early,* 109 Ind. App. 51, 32 N.E.2d 99 (1941); *American Surety Co. of New York v. Underwood,* Tex.Civ.App., 74 S.W.2d 551 (1934). In the absence of a statutory definition of "wages," most courts that have considered the question have included as part of an employee's wages living quarters and food which are provided to an employee who does not travel out of town in his employment. *Morgan v. Equitable General Insurance Co.,* La.App., 383 So.2d 1067 (1980) (domestic servant provided meals and taxi fare); *Hall v. Joiner,* La.App., 324 So.2d 884 (1975) (apartment manager provided apartment with utilities); *Bananno v. Employers Mutual Liability Insurance*

*Co. of Wisconsin,* La.App., 299 So.2d 923 (1974) (meals furnished to a cafeteria employee); *Ardoin v. Southern Farm Bureau Casualty Insurance Co.,* La.App., 134 So.2d 323 (1961) (employee provided house and milk); *Bruno v. 414 West 23rd Street Corp.,* 12 A.D.2d 831, 209 N.Y.S.2d 620 (1961) (apartment house superintendent provided apartment and utilities); *Matlock v. Industrial Commission,* 70 Ariz. 25, 215 P.2d 612 (1950) (ranch hand provided house, utilities, milk, and meat). However, when an employee is merely reimbursed for expenses incurred while traveling or while out of town for his employer or is given an allowance or subsistence to cover such expenses, courts generally do not include such amounts as "wages" in computing compensation benefits unless it appears that the employee derived some economic gain from those payments. *Layne Atlantic v. Scott,* Fla.App., 415 So.2d 837 (1982); *Moorehead v. Industrial Commission,* 17 Ariz.App. 96, 495 P.2d 866 (1972); *Solheim v. Hastings Housing Co.,* 151 Neb. 264, 37 N.W.2d 212 (1949); *Thibeault v. General Outdoor Advertising Co.,* 114 Conn. 410, 158 A. 912, 84 A.L.R. 184 (1932). These cases reason that an employee who is given an allowance or subsistence to cover away-from-home expenses which would not be incurred but for his employment suffers no economic loss when he no longer receives such allowance or subsistence after his employment ceases and he no longer incurs these extraordinary expenses. In *Moorehead v. Industrial Commission, supra,* the court carefully distinguished between the "room and board" benefits provided a ranch hand in an earlier case (*Matlock v. Industrial Commission, supra*) and an out-of-town travel expense allowance. Said the court:

> In Matlock the extra benefits provided by the employer had the effect of helping Matlock meet his ordinary day-to-day requirements for food and lodging—requirements which would continue substantially unchanged whether Matlock was employed or not. On the other hand, the extra benefits here provided by the employer are directly related to meet-

ing special transportation expenses entailed by reason of petitioner's employment—expenses which will cease with the cessation of petitioner's employment. . . . We think the principle to be derived from the foregoing is that "wages" do not include amounts paid to the employee to reimburse him for employment-related expenditures of a nature which would not be incurred but for his employment. Such payments are simply not intended as compensation for services rendered. Before any part of such allowances or reimbursements can be considered as a part of the employee's "wages" there should be some showing that the payments are more than sufficient to reimburse the employee for the work-related expense so that in effect the excess can be considered as extra compensation to the workman for his services performed.

*Moorehead v. Industrial Commission, supra,* 495 P.2d at 869. The economic benefit rule was also applied in *Layne Atlantic Co. v. Scott, supra,* and *Solheim v. Hastings, supra,* even though in those cases there were pertinent statutes which defined "wages" to include the reasonable value of board, rent, housing, lodging, or similar advantage received from the employer. *See also* Annot., 94 A.L.R. 763 (1935).

In the instant case, the Industrial Commission held that Barry A. Blair's average weekly wage included his subsistence allowance. In reaching that decision, the Commission reasoned that "Professor Larson in his treatise *The Law of Workmen's Compensation,* Section [60.12(a)], cites [sic] with approval the inclusion of room and board as a portion of wages on the basis that it constitutes a real economic gain to the employee." As we have already pointed out, the Legislature gave the Industrial Commission broad authority to determine an employee's average weekly wage. U.C.A., 1953, § 35–1–75. We hold that the Commission did not abuse its authority in opting to follow the real economic gain rule since it is a rational method that will "fairly determine the employee's

average weekly wage" and that will fairly meet the purposes of the statute. *Craig Burnham Produce v. Industrial Commission, supra; Salt Lake City Corp. v. Department of Employment Security,* Utah, 657 P.2d 1312 (1982).

■ The record reveals, however, that after choosing to apply the real economic gain rule, the Commission may have included the entire subsistence allowance in the average weekly wage through a misapplication of the rule. There are no findings partitioning the $32.50-per-day subsistence allowance into expenditures made necessary because of the out-of-town employment (such as for lodging, which normally would not constitute real economic gain); into expenditures for items that the decedent would have purchased even if he were living at home (such as for meals, which might constitute real economic gain); or into the amount, if any, of the subsistence allowance not spent by the decedent for subsistence (which would definitely constitute a real economic gain). Nor did the Commission find that the entire subsistence allowance constituted real economic gain. We hold that under the real economic gain rule, the decedent's entire subsistence allowance cannot be included in the average weekly wage without a finding, based on the facts presented, that the entire subsistence allowance actually constituted real economic gain.

We remand the case to the Industrial Commission to make further findings as to what portion of the decedent's subsistence allowance constituted real economic gain to him and to modify the award accordingly. No costs awarded.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.